# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren Miller, :
              Appellant :
                               :
       v.                      : No. 1370 C.D. 2017
                               : Submitted: April 13, 2018
Michael Clark                  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: May 8, 2018


Darren Miller (Miller) appeals from the order of the Erie County Court of Common Pleas (trial court) dismissing his complaint seeking a permanent injunction against Michael Clark (Superintendent Clark), the Superintendent of the State Correctional Institution at Albion (SCI-Albion), for: (1) further medical/psychological treatment; and/or (2) reinstated "Z-Code"[1] status, which

---

[1] Under the SCI Reception and Classification Procedures Manual:

> Any inmate who meets any of the following criteria shall be carefully reviewed by staff and considered for Program Code "Z" housing classification.
>
>     (a) An inmate who is evaluated by psychiatric or psychological staff as having mental health problems. Examples include the following:

**(Footnote continued on next page…)**

would require him to be in a single-occupancy cell.  For the following reasons, we affirm.

# I.

Miller is an inmate currently incarcerated at SCI-Albion.  In January 2017, after having been in a single cell for 20 years, Miller was forced to live with a cellmate.  Miller then filed a *pro se* complaint against Superintendent Clark seeking injunctive relief to obtain a form of mental-health treatment as well as restoration of his "Z-Code" status.  In his complaint, Miller alleged that he suffers from serious mental illnesses including a history of attempted suicide and violence.  Attached to that complaint was a November 29, 2016 report detailing an incident that occurred after Miller refused to take a cellmate.  The reporting staff member stated:

---

**(continued…)**

> (1) Dangerous to self;
> (2) Dangerous to others;
> (3) Self-mutilative;
> (4) Unable to care for self; and/or
> (5) Active on the Psychiatric Review Team (PRT)
> roster.
>
> ***
>
> (d) An inmate who has a documented history of aggressive behavior towards cell partners or who staff has reason to believe would exhibit assaultive or predatory behavior towards cell partners.

(Record (R.) Item No. 7, Complaint, Attachment.)

> I then informed [Miller] that he is not a single cell status inmate and [cannot] refuse to be double celled. He then stated to me that "if you put him in here he isn't safe." I then shut his cell door and notified control.

(Record (R.) Item No. 7.) The following month, Miller attempted suicide by taking a large amount of pills and was taken to UPMC Hamot overnight for observation. Miller alleged that he was not receiving any mental health care at the prison and "continues to suffer." (Complaint ¶9.)

On April 17, 2017, in response to Miller's Motion for Expedition, the trial court ordered that an expedited hearing on Miller's request for injunction be held on April 28, 2017. The order also required that the Erie County Sheriff serve Superintendent Clark with the order scheduling the hearing as well a copy of the complaint and request for an injunction. On April 24, 2017, the Sheriff served Superintendent Clark.

At the April 28, 2017 hearing, Superintendent Clark did not appear, no appearance was entered on his behalf, and the hearing proceeded without him. Miller testified that he was on medication for mood swings but stopped taking it after his "Z-Code" status was revoked. Miller also testified that he often heard voices in his head telling him to hurt himself and others.

On May 2, 2017, the trial court ordered that Superintendent Clark provide the court with Miller's medical records from UPMC Hamot and have Miller evaluated by a certified, independent psychologist who was unaffiliated with the Pennsylvania prison system. Counsel for Superintendent Clark entered

his appearance on May 17, 2017, and Superintendent Clark complied with the trial court's May 2, 2017 order.

On May 15, 2017, Miller filed a Motion for Judgment upon Default or Admission, alleging that because Superintendent Clark failed to appear at the April 28, 2017 hearing and because his counsel did not timely file an entry of appearance, Miller was entitled to permanent injunctive relief. On June 5, 2017, the trial court denied the motion because the relief granted in its May 2, 2017 order made the motion moot. Miller then filed a Motion for Clarification, noting that he had not been granted injunctive relief to receive adequate mental health care and reinstatement to "Z-Code" status.

In accordance with the May 2, 2017 order, Miller was evaluated by Dr. Keith R. Stowell (Dr. Stowell), a board certified physician in adult psychiatry, forensic psychiatry and geriatric psychiatry. Dr. Stowell interviewed Miller, reviewed Miller's UPMC Hamot medical records and medical administration notes and psychiatry, as well as psychology and progress notes from doctors at SCI-Albion. Dr. Stowell also conducted a collateral interview with Sergeant Conley, an employee of SCI-Albion.

In his report, Dr. Stowell stated that Miller exhibits signs of antisocial personality disorder and recommended the following treatment:

> There is no standard recommended treatment for Antisocial Personality Disorder. There is some evidence to support the use of group-based cognitive and behavioral interventions to address impulsivity,

4

interpersonal difficulties, and antisocial behavior. However, availability of this programming and Mr. Miller's participation should be at the recommendation of the behavioral health treatment team at SCI-Albion. It is not essential that such programming be provided to him. It should be noted that there have been multiple attempts by mental health professionals to meet with Mr. Miller over the past several months, but he has declined to interact with them.

(R. Item No. 3, 1925(a) Opinion at 3) (quoting Dr. Stowell's report).[2] Furthermore, Miller's UPMC Hamot records stated, "Patient may be overstating how many [pills he] actually took as he again shows no signs or symptoms of Benadryl or Bupropion overdose." (*Id.*) The trial court noted that Bupropion is a medication used to treat depression. Furthermore, Dr. Gottesman, D.O., presumably a prison physician, stated in his Psychiatric Observation Cell Discharge Summary, that Miller:

Argues very logically and coherently that he needs his Z code or "for sure something is gonna happen bad." Fabricated auditory hallucinations. No acute risk to self or others. Wants to influence staff to maintain his Z code.

(*Id.* at 4.) Another prison progress note indicated that Miller "declined to be seen by psychology. No reason was provided and he has been refusing to be seen for several months." (*Id.*)

---

[2] Dr. Stowell's report was not forwarded with the trial court's record. It was filed under seal with the trial court, at Superintendent Clark's request, because it would reveal sensitive medical and mental health information pertaining to Miller.

5

Based on Dr. Stowell's report, the trial court dismissed Miller's complaint requesting injunctive relief in the form of Superintendent Clark providing additional medical/psychological treatment and reinstating his "Z-Code" status because it was satisfied that: (1) Miller was being treated for his mental health issues; (2) he was not in imminent danger of serious bodily harm; and (3) Superintendent Clark did not exhibit deliberate indifference to the serious medical or mental health needs of Miller. This appeal followed.[3]

## II.

### A.

On appeal, Miller contends that the trial court erred in dismissing his complaint and denying injunctive relief because he is entitled to default judgment under Pa. R.C.P. No. 1037 because Superintendent Clark failed to appear at the April 28, 2017 hearing or timely enter an appearance. Pa. R.C.P. No. 1037 provides in relevant part:

> (b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend or, except as provided by subdivision (d), for any relief to be due by the defendant's pleadings.

> * * *

---

[3] This Court's scope of review is limited to a determination of whether constitutional rights have been violated and whether the trial court abused its discretion or committed an error of law. *Bronson v. Lechward*, 624 A.2d 799 (Pa. Cmwlth. 1993).

(d) In all cases in which equitable relief is sought, the court shall enter an appropriate order upon the judgment of default or admission and may take testimony to assist in its decision and in framing the order.

The trial court, construing the matter before it at the April 28, 2017 hearing as a motion for actions to be taken to determine whether Miller needed additional medical care or housed in a single cell, denied Miller's motion because it had already provided the requested relief in its May 2, 2017 Order. Miller seems to argue that the matter is not moot because what he was seeking at the April 28, 2017 hearing was additional mental health treatment and to be housed in a single cell, not an evaluation to see if he needed treatment or single-cell housing.

We need not address this issue because Miller was not entitled to a default judgment under Pa. R.C.P. No. 1037. Under that provision, a default judgment can be taken when a defendant fails to file a responsive pleading (normally, within 20 days) to a complaint. However, pursuant to Pa. R.C.P. No. 237.1, this can only be done after ten days' notice is given by the plaintiff to the defendant that he intends to do so. In this case, the ten day notice that was required to be given by Miller to Superintendent Clark was not given, making any request or entry of a default judgment improper. Now to the merits.

## B.

Without precisely saying so, Miller is alleging that the trial court erred when dismissing his Eighth Amendment claim, finding that he was receiving proper treatment and that accommodation for his medical condition was

7

unnecessary – *i.e.*, single-cell housing.[4]  In order to state a cognizable claim under the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Whether the medical need of an inmate is sufficiently serious is an objective inquiry, the factors of which include:

> (i) [O]ne that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that causes chronic and substantial pain.

*Tindell v. Department of Corrections*, 87 A.3d 1029, 1038-39 (Pa. Cmwlth. 2014) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  An inquiry into whether a prison official was deliberately indifferent requires that the prisoner show that:  (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference. *Farmer v. Brennan*, 511 U.S. 837, 840 (1980).

---

[4] Amendment VIII of the U.S. Const. provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII.

Miller failed to establish evidence of deliberate indifference to serious medical needs by Superintendent Clark, based on Dr. Stowell's report. That report shows that: (1) Miller was being treated for his depression prior to his suicide attempt; (2) after the suicide attempt, he was evaluated, medicated and offered psychological services, but turned them down; and (3) the only mental health condition Miller has is Antisocial Personality Disorder.

As to Miller's request for single-cell housing, an inmate does not have a right to be confined in housing of his choosing. 37 Pa. Code § 93.11(a). In fact, it is well settled that prisoners do not have a due process right to be single-celled. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337 (1981). Moreover, prison officials must be afforded wide-ranging deference on the adoption and execution of policies and practices that, in their judgment, are necessary to preserve internal order and maintain institutional security. *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980). Under the SCI Reception and Classification Procedures Manual, to be considered for single-cell housing – *i.e.*, a Program Code "Z" housing classification – Miller must have a mental health condition that makes him dangerous to himself or others. (*See supra* note 1.) In this case, the trial court accepted Dr. Stowell's report that Miller is not dangerous to himself or others, and his mental health problems do not require that he be placed in a single cell. Because there is no evidence that his mental health conditions were not being addressed or that they require him to be housed in a single cell, Miller failed to make out a claim that his Eighth Amendment rights were violated or that prison officials abused their discretion by not placing him in a single cell.

For the foregoing reasons, we affirm.[5]

_____

DAN PELLEGRINI, Senior Judge

---

[5] Miller contends that the trial court denied him the opportunity to present evidence of his alleged mental health illness. This issue was not raised in his 1925(b) statement and, therefore, is waived.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren Miller,                          :
              Appellant              :
                                     :
          v.                       : No. 1370 C.D. 2017
                                     :
Michael Clark                          :

# **O R D E R**

AND NOW, this 8th day of May, 2018, the June 20, 2017 order of the Court of Common Pleas of Erie County is affirmed.

_____
DAN PELLEGRINI, Senior Judge